IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HOWARD LEVENTHAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 4614 |
| | ) | |
| GENE BYRON SCHENBERG, | ) | |
| RICHARD F. HUCK, III,[1] | ) | |
| MICHAEL J. McKITRICK, | ) | |
| DANNA McKITRICK, PC, | ) | |
| PATRICK G. SOMERS,[2] | ) | |
| NETSECURE TECHNOLOGIES, LTD., | ) | |
| and DANIEL McCANN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

In his Second Amended Complaint, plaintiff Howard Leventhal ("Leventhal") alleges

that defendants Gene Byron Schenberg ("Schenberg"), Richard F. Huck, III ("Huck"); Michael

J. McKitrick ("McKitrick"), and Danna McKitrick PC ("Danna McKitrick") are liable for

malicious prosecution (First Cause of Action) and abuse of process (Second Cause of Action);

that Schenberg is liable for copyright infringement (Third Cause of Action); that defendants

---

[1] Although Richard F. Huck, III was not included in the caption of the Second Amended
Complaint, the court nevertheless considers Huck to be a defendant because Leventhal has
specifically named Huck as a defendant in three of his causes of action and has identified
"Defendant Huck" as a party to this litigation. (*See* 2d Am. Compl. ¶¶ 11, 17, 43, 61.)

[2] Patrick G. Somers was dismissed with prejudice on August 21, 2012, pursuant to
settlement. (Dkt. Nos. 144, 145.) The pending "Motion to Dismiss Plaintiff's Second Amended
Complaint Pursuant to Rule 12(b)(6) of Defendant Patrick G. Somers" (Dkt. No. 110) is
therefore dismissed as moot.

NetSecure Technologies, Inc. ("NetSecure") and Daniel McCann ("McCann") are liable for contributory copyright infringement (Fourth Cause of Action) and vicarious copyright infringement (Fifth Cause of Action); and that all Defendants are liable for unfair competition (Sixth Cause of Action). (Dkt. No. 94 ("2d Am. Compl.").)

Now pending before the court is the "Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rule 12(b)(6) of Defendants Gene Byron Schenberg, Richard F. Huck, III, Michael J. McKitrick, Danna McKitrick, P.C., NetSecure Technologies, Ltd. and Daniel McCann." (Dkt. No. 97 ("Defs.' Mot").) For the reasons set forth below, Defendants' motion is granted.

<u>BACKGROUND</u>

When ruling on a motion to dismiss, the court accepts the factual allegations set forth in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Fednav Int'l Ltd. v. Continental Ins. Co.,* 624 F.3d 834, 837 (7th Cir. 2010). The following background facts are therefore set forth as alleged in Leventhal's Second Amended Complaint.

Leventhal is a former officer of two now-dissolved Illinois corporations named BitzMart, Inc. ("BitzMart") and Primecom Interactive, Inc. ("Primecom"). (2d Am. Compl. ¶ 6.) Schenberg was employed at both companies, first as a contract sales and marketing service provider for Primecom and later as Chief Marketing Officer for BitzMart. (*Id.*) Both BitzMart and Primecom "created, developed, and sold software products to businesses and in retail outlets." (*Id.*) Schenberg is currently employed with defendants NetSecure and McCann. (*Id.* ¶ 16.)

Schenberg resigned as BitzMart's Chief Marketing Officer in 2002. (*Id.* ¶¶ 6, 14.) When he left BitzMart, Schenberg took with him, without permission, certain computer files containing "proprietary lists of customers and detailed customer information and sales information which belonged to Leventhal and were made available to BitzMart on a royalty-free basis." (*Id.* ¶ 14.) From 2002 to the present, Schenberg has "repeatedly used the files [and] displayed the files for the purpose of accessing information about BitzMart's former clients . . . up to and including the present day and his current employment with Defendants NetSecure and McCann." (*Id.* ¶ 16.)

Leventhal and Schenberg have been engaged in extensive litigation against each other for approximately ten years, beginning in 2002 when Schenberg sued BitzMart in the Circuit Court of St. Louis County, Missouri, for $60,000 in unpaid wages (Case No. 2102CC-0016362CV ("Wages Case")) and BitzMart filed counterclaims against Schenberg for conversion, computer tampering, violations of the Computer Fraud and Abuse Act, cyber trespass, and tortious interference. (*Id.* ¶ 10; *see also* Dkt. No. 94-1, Pl.'s Ex. D ("Table of Litigation Cases"),[3] Refs. 1-2.) Schenberg prevailed at trial after his attorney, Huck, intentionally scheduled the trial for a date he knew Leventhal could not attend court. (*Id.* ¶ 21.) Schenberg was awarded a judgment of $284,171.69 in the Wages Case, along with a finding that BitzMart was Leventhal's "alter ego." (*Id.* ¶ 22; Table of Litigation Cases, Refs. 1-2.)

From December 2003 through July 2011, Leventhal filed at least six cases against Schenberg in various courts, in addition to the case now pending before this court, alleging claims for conspiracy, conversion, copyright infringement, tortious interference, abuse of

---

[3] Exhibits attached to a complaint are considered part of the complaint. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

process, fraud, collusion, unpaid wages, and involuntary servitude. (Table of Litigation Cases, Refs. 3-6, 9, 15-16.)

In April 2004, Schenberg filed a case against Leventhal for abuse of process and malicious prosecution in the Circuit Court of St. Louis County, Missouri (Case No. 04CC-1483 ("Malicious Prosecution Case")). (*Id.*, Ref. 7.) Schenberg prevailed in the Malicious Prosecution Case, and was awarded a judgment of $71,895 in actual damages and $200,000 in punitive damages. (*Id.*) Schenberg was also awarded $5,000 in attorney's fees for Leventhal's improper attempt to remove the Malicious Prosecution Case to federal court. (*Id.*, Ref. 10 (Case No. 06-C-0749 (N.D. Ill.) ("Removal Case") (Kendall, J.)).)

On March 22, 2010, Leventhal and his former wife, Malgorzata J. Kubiak ("Kubiak"), filed a petition for Chapter 7 bankruptcy in the Northern District of Illinois. (2d Am. Compl. ¶ 12; Table of Litigation Cases, Refs. 11-12 (*In re Leventhal*, Case No. 10-B-12257 (Bankr. N.D. Ill.) ("Bankruptcy Case")).) Leventhal and Kubiak received their bankruptcy discharge on June 30, 2010. (Bankruptcy Case, Dkt. No. 33.)[4] More than a year later, on July 8, 2011, Schenberg filed an adversary proceeding in the Bankruptcy Case. (2d Am. Compl. ¶ 12; Table of Litigation Cases, Ref. 13 (*Schenberg v. Leventhal*, Adversary Proceeding No. 11-A-1467 (Bankr. N.D. Ill.) ("Adversary Proceeding")); *see also* Pl.'s Ex. E (docket sheet).) On October 28, 2011, as part of the Adversary Proceeding, Bankruptcy Judge Carol A. Doyle dismissed Schenberg's claims for revocation of discharge as untimely, and dismissed Schenberg's remaining claim against Kubiak

---

[4] The court may take judicial notice of matters of public record without converting a motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 12(d); *see also Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012) (court may take judicial notice of "facts readily ascertainable from the public court record and not subject to reasonable dispute").

for failure to state a claim, leaving one claim pending against Leventhal in the Adversary

Proceeding. (2d Am. Compl. ¶ 13; *see also* Adversary Proceeding, Dkt. No. 49.) On April 13,

2012, Bankruptcy Judge A. Benjamin Goldgar entered a judgment in favor of Schenberg on

Schenberg's remaining claim against Leventhal that the judgments from the Malicious

Prosecution Case and the Removal Case were not dischargeable in bankruptcy. (Adversary

Proceeding, Dkt. No. 159.)

Schenberg "has been represented in every single case" by defendant Huck, who also

represents all Defendants in the case now pending before this court. (2d Am. Compl. ¶ 11.)

Huck's law firm, Danna McKitrick, and Huck's law partner, MicKitrick, have also been named

as defendants in this case.

LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires complaints to include "a short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). In other words, the complaint must "give the defendant fair notice of what the . . . claim

is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (quoting *Twombly*, 550

U.S. at 570). A complaint is sufficient if it gives "enough details about the subject-matter of the

case to present a story that holds together." *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir.

2010). On the other hand, a plaintiff "can plead himself out of court by pleading facts that show

that he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823 (7th Cir. 2011).

ANALYSIS

1.     Malicious Prosecution – First Cause of Action

In response to the pending motion, Leventhal has voluntarily limited his malicious prosecution claim to "Defendants' actions in the Bankruptcy Court for the Northern District of Illinois, Case No. 11 A 01467 adversary proceeding." (Dkt. No. 116 ("Pl.'s Resp.") at 4, n.2.) The court accordingly limits its analysis to the allegations set forth in paragraphs 19-20, 31-33, 37, 41-42 of the Second Amended Complaint.

To prevail on a claim of malicious prosecution, a plaintiff must ultimately demonstrate (1) "that the defendant instituted the underlying suit without probable cause and with malice"; (2) "that the former action was terminated in the plaintiff's favor," and (3) "that as a result of the underlying action the plaintiff suffered a special injury beyond the usual expense, time or annoyance in defending a lawsuit." *Miller v. Rosenberg*, 749 N.E.2d 946, 952 (Ill. 2001).

Defendants argue in their motion to dismiss "Leventhal has not alleged that any lawsuit filed by Schenberg has terminated in Leventhal's favor" and "Leventhal has failed to factually allege 'special injury' or 'special damage' beyond the usual expense, time or annoyance in defending a lawsuit." (Def.'s Mot. ¶¶ 13, 15.) The court takes judicial notice of the fact that the Adversary Proceeding initiated by Schenberg in bankruptcy case number 11 A 1467 ultimately terminated in favor of Schenberg on April 13, 2012—approximately two months after the filing of the Second Amended Complaint— when Judge Goldgar held that Leventhal's debts to Schenberg were non-dischargeable in bankruptcy. (*See* Adversary Proceeding, Dkt. No. 159.) Schenberg's filing of the Adversary Proceeding, itself, therefore cannot constitute valid grounds

for Leventhal's malicious prosecution claim.

Leventhal argues that he nevertheless received a "judicial determination in [his] favor," because some of the claims filed by Schenberg in the Adversary Proceeding were dismissed by the bankruptcy court. (Pl.'s Resp. at 5.) On its face, this argument does not satisfy the requirement that the *suit* or *action* as a whole must have terminated in favor of Leventhal. As noted above, the Adversary Proceeding ultimately terminated in favor of Schenberg, when Judge Goldgar determined that Leventhal's debts to Schenberg were not dischargeable in bankruptcy. Even if the court were to consider Leventhal's argument as to the dismissed claims, the dismissal of Schenberg's claims against Kubiak cannot be viewed as a judicial determination in Leventhal's favor, because these claims were never brought against Leventhal. Moreover, Leventhal has not alleged any special injury resulting from Schenberg's dismissed claim against Leventhal for revocation of the bankruptcy discharge. While Leventhal undoubtedly was required to expend both time and financial resources in explaining to the court why Schenberg's claim was time-barred, Leventhal has not alleged that Schenberg's "wrongful attack on Leventhal's bankruptcy discharge" (Pl.'s Resp. at 5) resulted in any injury beyond the usual stresses of litigation. For all of these reasons, the court finds that Leventhal has failed to state a plausible claim for malicious prosecution. Defendants' motion to dismiss Leventhal's First Cause of Action is therefore granted.[5]

2.    Abuse of Process – Second Cause of Action

In his claim for abuse of process, Leventhal alleges that Schenberg and Huck have filed

_____

[5] Because the court has dismissed Leventhal's First Cause of Action for failure to state a plausible claim to relief, the court need not address Defendants' additional arguments supporting dismissal of this claim.

"numerous and repeated lawsuits, motions and pleading[s] . . . to harass, embarrass and financially ruin Plaintiff" and to "generat[e] a smokescreen to obscure Schenberg's fraudulent accounting [and use of misappropriated copyrighted materials]."  (2d Am. Compl. ¶ 44.) Defendants argue that Leventhal's claim for abuse of process must be dismissed for failure to state a claim, because "[m]ere institution of proceedings does not, in and of itself, constitute an abuse of process."  (Def.'s Mot. ¶ 17.)  The court agrees.

Abuse of process requires (1) "[e]xistence of an ulterior purpose or motive" and (2) "[s]ome act in the use of the legal process not proper in the regular prosecution of the proceedings."  *Holiday Magic, Inc. v. Scott*, 282 N.E.2d 452, 455 (Ill. App. Ct. 1st Dist. 1972). The "mere institution of a suit or proceeding, even with a malicious intent or motive, does not itself constitute an abuse of process."  *Id.* at 456.  Rather, "to satisfy the second element, the plaintiff must show that the [court's] process was used to accomplish some result that is beyond the purview of the process," such as an arrest, the seizure of property, or "a fraudulent and malicious manipulation of service of summons."  *Kumar v. Bornstein*, 820 N.E.2d 1167, 1173-74 (Ill. App. Ct. 2d Dist. 2004) (in part quoting *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 790 N.E.2d 925, 930 (Ill. App. Ct. 2d Dist. 2003)).  In this context, process is defined as "any means used by the court to acquire or to exercise jurisdiction over a person or over specific property."  *Holiday Magic*, 282 N.E.2d at 456.  The elements of a claim for abuse of process "are strictly construed, as the tort of abuse of process is not favored under Illinois law."  *Kumar*, 820 N.E.2d at 1173.

In his response, Leventhal argues that the "fil[ing] [of] Defendant Schenberg's adversary complaint to reopen the bankruptcy proceeding" constitutes an abuse of process, because the

filing was "over a year" late and because "[t]hree out of four of Defendant Schenberg's claims were dismissed before trial." (Pl.'s Resp. at 7.) The mere filing of the Adversary Proceeding, by itself, cannot constitute an abuse of process. *Holiday Magic, Inc.*, 282 N.E.2d at 455. This is especially true in light of Schenberg's success on the merits on one of his claims. Moreover, the filing of Schenberg's remaining, non-successful claims in the Adversary Proceeding did not subject Leventhal to any additional process on the part of the court. Schenberg's actions in the Adversary Proceeding therefore cannot establish a plausible claim for abuse of process. Leventhal's allegations regarding the Wages Case and the 2004 Lake County Case (04 L 199) (*see* Pl.'s Resp. at 6; 2d Am. Compl. ¶¶ 21, 26) likewise fail to allege a "misuse or perversion of the process of the court." *Holiday Magic*, 282 N.E.2d at 456. Because Leventhal has failed to state a plausible claim for abuse of process, Defendants' motion to dismiss Leventhal's Second Cause of Action is granted.[6]

3.      Copyright Infringement, Contributory Copyright Infringement, and Vicarious Copyright Infringement – Third, Fourth, and Fifth Causes of Action

Leventhal alleges in his Third Cause of Action that Schenberg infringed Leventhal's copyright in "a list of contacts and additional sales and marketing materials to be used for the purpose of soliciting and effectuating business first on behalf of Primecom, then subsequently on behalf of Bitzmart" (the "Leventhal Business Information Data") by "possess[ing], display[ing], mak[ing] derivative works via edits, and print[ing] out copies of some or all of the text contained in [the Leventhal Business Information Data]," beginning in 2002 and continuing "uninterrupted,

_____

[6] Because the court has dismissed Leventhal's Second Cause of Action for failure to state a plausible claim to relief, the court need not address Defendants' additional arguments supporting dismissal of this claim.

9

though and including the date of filing of the instant Complaint." (2d Am. Compl. ¶ 47.)

Leventhal alleges in his Fourth and Fifth Causes of Action that NetSecure and McCann are liable

for contributory copyright infringement and vicarious copyright infringement, because they "did

nothing to prevent Defendant Schenberg from using the Leventhal Business Information [Data]."

(*Id.* ¶¶ 53, 56.)

      a. <u>Registration Requirement</u>

Defendants first argue that Leventhal is precluded from bringing his copyright claims,

because he failed to register his copyright in the Leventhal Business Information Data prior to

filing the Second Amended Complaint. Pursuant to statute, "no civil action for infringement of

the copyright in any United States work shall be instituted until preregistration or registration of

the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). The

Supreme Court has characterized this "registration requirement" as a "precondition to filing a

claim." *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1241 (2010). On the other hand,

circuit courts are split over "whether registration is complete when an application is made or

only after the Copyright Office has acted on the application." *Brooks-Ngwenya v. Indianapolis

Public Schools*, 564 F.3d 804, 806 (7th Cir. 2009). The Seventh Circuit has interpreted § 411(a)

to require that "an application for registration must be *filed* before the copyright can be sued

upon." *Chicago Board of Education v. Substance, Inc.*, 354 F.3d 624, 631 (7th Cir. 2003)

(emphasis added).

Leventhal generally alleges in his Second Amended Complaint that the Leventhal

Business Information Data has "become the subject matter of a copyright application for

registration" (2d Am. Compl. ¶ 48), and he attaches to his Second Amended Complaint a receipt

from the Copyright Office showing a filing date of February 9, 2012—the same date Leventhal filed his Second Amended Complaint and first alleged copyright infringement claims in this lawsuit. (Dkt. No. 94-1, Pl.'s Ex. A.) In response to the pending motion to dismiss, Leventhal explains that he "completed his copyright application, paid the proper fee, and applied for copyright registration electronically on February 9, 2012, prior to submitting his Second Amended Complaint [that same day]." (Pl.'s Resp. at 8.)

At this stage of the litigation, the court accepts the allegations of the Second Amended Complaint as true. *Fednav Int'l Ltd.,* 624 F.3d at 837. Together with Leventhal's attached receipt, the Second Amended Complaint is consistent with Leventhal's further explanation that he, indeed, filed his copyright registration prior to filing his Second Amended Complaint. Leventhal has appropriately limited his requested money damages to "damages for copyright infringement *from the date of filing of this Second Amended Complaint* [e.g. from the date of his copyright registration] to the date of judgment." (2d Am. Compl. ¶ 49 (emphasis added).) No more is required at this stage of the litigation.

b. Statute of Limitations

The court next addresses Defendants' argument that Leventhal's copyright claims must be dismissed as time-barred. Claims for copyright infringement are subject to a three-year statute of limitations, beginning from the date "when a reasonable person in the plaintiff's position would have discovered the infringement." *Johnson v. Cypress Hill*, 619 F. Supp. 2d 537, 543 (N.D. Ill. 2008) (Norgle, J.); *see also* 17 U.S.C. § 507(b). Defendants argue that Leventhal necessarily knew about Schenberg's alleged copyright infringement in December 2003, when Leventhal first filed a lawsuit against Schenberg in the Northern District of Illinois

alleging copyright infringement of the Leventhal Business Information Data. (Table of Litigation Cases, Ref. 3 (Case No. 03-C-8772 (N.D. Ill.) ("2003 Copyright Case") (Guzman, J.)) (dismissed for failure to register copyright).) Because Leventhal did not file his copyright claims in this case until February 2012, more than eight years later, Defendants argue that Leventhal's copyright claims fall well outside of the applicable statute of limitations. In response, Leventhal emphasizes that Schenberg, NetSource, and McCann are alleged to be "still engaging in unauthorized use of the copyrighted 'Leventhal Business Information' database," and Leventhal quotes *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983), for the proposition that "the statue of limitations does not begin to run on a continuing wrong till the wrong is over and done with." (Pl.'s Resp. at 13.)

The court in *Taylor* held that as long as the "last infringing act" was within the statutory period, a plaintiff alleging copyright infringement may "reach back and get damages for the entire duration of the alleged violation." *Taylor*, 712 F.2d at 118-19. Since the time of the *Taylor* decision, however, the Seventh Circuit has significantly narrowed its own general interpretation of the continuing violation doctrine in various contexts. "According to Seventh Circuit cases decided in the 1990s and 2000s, the continuing-violation doctrine applies [only] when a plaintiff's cause of action does not accrue until a series of wrongful acts blossoms into an injury on which suit can be brought." *Peterson v. Harley-Davidson, Inc.*, No. 12-CV-00381, 2012 WL 3113184, at *2 (E.D. Wis. July 31, 2012) (Adelman, J.) (citing *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008), and *Heard v. Sheahan*, 253 F.3d 316, 319–20 (7th Cir. 2001)). In all other circumstances, "[t]he statute of limitations begins to run upon injury . . . and is not tolled by subsequent injuries." *Limestone Dev. Corp.*, 520 F.3d at

801.

At least two district courts in this circuit have felt bound by the precedent of *Taylor* to allow plaintiffs to recover on a "continuing series of copyright infringements," despite the fact that "the initial copying . . . occurred more than three years before the plaintiff filed suit." *Peterson*, 2012 WL 3113184, at *2; *see also Persis Int'l, Inc. v. Burgett, Inc.*, No. 09-C-7451, 2012 WL 4176877, at *4, n.5 (N.D. Ill. Sept. 18, 2012) (Guzman, J.). While this court does not take lightly its duty to follow controlling precedent as set forth by the Seventh Circuit, in this case the court is "powerfully convinced that the Seventh Circuit would rule otherwise at the first opportunity" and would overturn the almost thirty-year-old precedent of *Taylor* given the opportunity to do so. *Zamecnik v. Indiana Prairie Sch. Dist. No. 204 Bd. of Educ.*, 619 F. Supp. 2d 517, 525 (N.D. Ill. 2007) (Hart, J.) (citing *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987)). In *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 992 (7th Cir. 2002), the Seventh Circuit analyzed the continuing violation doctrine with respect to alleged violations of the Cable Communications Policy Act of 1984. The court cited *Taylor*, but went on to consider the Supreme Court's then-recent clarification of "the nature of continuing violations" set forth in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). *CSC Holdings*, 309 F.3d at 992. Ultimately, the Seventh Circuit determined "[t]he mere fact that the [defendants] made a regular habit of violating the statute is not enough to convert multiple individual violations into one long continuing wrong," and rejected the plaintiff's argument that the continuing violation doctrine permitted the plaintiff to recover damages for activity taking place prior to the relevant limitations period. *CSC Holdings*, 309 F.3d at 992. Based on *Morgan* and *CSC Holdings*, this court finds that the continuing violation doctrine does not apply to Leventhal's claims, and that

Leventhal is barred from recovering damages for any acts of infringement accruing prior to February 9, 2009, three years before the filing of Leventhal's Second Amended Complaint. On the other hand, to the extent Leventhal has alleged infringing activity taking place within the statute of limitations, his copyright claim is not time-barred. *See CSC Holdings*, 309 F.3d at 921 ("[u]nder any theory of the case, [plaintiff] filed a timely claim as to those sales [made during the two years preceding the commencement of this action]"); *see also Brooks-Ngwenya v. Thompson*, 202 Fed. App'x 125, 127 (7th Cir. 2006) (unreported) ("each new copy is a fresh wrong, with its own three-year period of limitations"). To the extent Defendants seek to dismiss Leventhal's copyright claims in their entirety as time-barred, Defendants' motion is denied.

    c. <u>Judicial Estoppel</u>

Defendants further argue that Leventhal's copyright claims are barred by the doctrine of judicial estoppel, because Leventhal failed to disclose his alleged copyright ownership and potential copyright claims during his proceedings in bankruptcy court. In his bankruptcy Schedule B, filed on April 6, 2010, Leventhal was instructed to "list all personal property of the debtor of whatever kind." (Defs.' Ex. A ("Leventhal Schedules") at Sch. B p. 1.) Leventhal denied owning any "Patents, copyrights, and other intellectual property" at that time. (Sch. B, Item 22.) He also denied owning "contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," and denied owning "[o]ther personal property of any kind not already listed." (Sch. B, Item 21 & Item 35.) Defendants argue that these representations were both false and intentional, in light of the 2003 copyright infringement claim Leventhal had previously filed against Schenberg in the 2003 Copyright Case, claiming $5,000,000 in damages for Schenberg's alleged infringement of Leventhal's

copyright in the Leventhal Business Information Data. (Defs.' Mot. ¶ 31; *see also* 2003 Copyright Case, Dkt. No. 1.) As noted above, the 2003 Copyright Case was dismissed on July 29, 2004, without prejudice, due to Leventhal's failure to register his claimed copyright in the Leventhal Business Information Data. (*See* 2003 Copyright Case, Dkt. No. 14 ("Because Leventhal has failed to allege copyright registration, this Court is without subject matter jurisdiction, and the Complaint must be dismissed under Rule 12(b)(1).").) Defendants argue that "Leventhal's reassertion of the copyright infringement claim at this time (after his [June 30, 2010] discharge) tends to show that his concealment of his copyright claim in his bankruptcy was intentional," and that Leventhal should therefore be barred from raising his copyright claims as part of the lawsuit pending before this court. (Defs.' Mot. ¶ 31.)

Leventhal asserts that, as a *pro se* debtor, he "recognized no copyright asset or interest that could be cognizable in any court" at the time he filed his Schedule B. (Pl.'s Resp. at 14.) By way of further explanation, Leventhal notes that his copyright interest in the Leventhal Business Information Data "was not perfected until he filed his copyright application with the Copyright Office in February 2012." (*Id.*) In the alternative, Leventhal argues that "[t]he question of whether or not Leventhal's schedules were fraudulent has already [been] tested by Defendant Schenberg, and the Bankruptcy Court for the Northern District of Illinois . . . [found] in Leventhal's favor." (*Id.* (citing Adversary Proceeding, Dkt. No. 49).)

"Judicial estoppel is a matter of equitable judgment and discretion." *In re Knight-Celotex, LLC*, 695 F.3d 714, 721 (7th Cir. 2012). In short, the judicial estoppel doctrine "prevents a party from adopting a position in a legal proceeding contrary to a position successfully argued in an earlier legal proceeding." *Esparza v. Costco Wholesale Corp.*, No. 10-

C-5406, 2011 WL 6820022, at *4 (N.D. Ill. Dec. 28, 2011) (Aspen, J.) (quoting *Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 891 (7th Cir. 2005)).  The aim of the judicial estoppel doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *New Hampshire v. Main*e, 532 U.S. 742, 749-50 (2001) (internal quotation marks and citations omitted).  "[O]ne necessary prerequisite is that a party's earlier position must be 'clearly inconsistent' with the later stance."  *Thompson v. O'Bryant*, No. 08-C-68, 2008 WL 1924954, at *2 (N.D. Ill. Apr. 30, 2008) (Kocoras, J.) (quoting *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992)).

In the context of prior bankruptcy proceedings, courts applying the doctrine of judicial estoppel must also take into account the interest of creditors in any non-disclosed claims or assets.  If creditors have no interest in a non-disclosed claim or asset—as when the bankruptcy trustee has affirmatively abandoned any interest in the property of the estate under 11 U.S.C. § 554(a)—the doctrine of judicial estoppel may be applied against the debtor.  *See Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends").  Generally speaking, however, "[p]re-bankruptcy claims [and assets] are part of the debtors' estates" and belong to the bankruptcy trustee for the benefit of the creditors.  *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006).  If a bankruptcy trustee has not affirmatively abandoned the estate's interest in a previously non-disclosed claim or asset, "it is not equitable to employ [judicial estoppel] to injure creditors who are themselves victims of the debtor's deceit."  *Cannon-Stokes*, 453 F.3d at 448.  The doctrine of judicial estoppel simply does not apply under those circumstances, in part because the "estate itself" has not "engage[d] in

contradictory litigation tactics." *Id.* On the other hand, the debtor's lack of standing becomes an issue.[7] Because the non-disclosed claim does not belong to the debtor, the debtor "cannot pursue it in litigation." *Biesek*, 440 F.3d at 414.

Here, the trustee in Leventhal's bankruptcy case has already been discharged. (*See* Bankruptcy Case, Dkt. No. 112.) Neither party has addressed the trustee's interest in (or knowledge of) Leventhal's copyright claims, nor has the trustee himself addressed this question before either this court or the bankruptcy court. *Compare Cannon-Stokes*, 453 F.3d at 448 ("the trustee abandoned any interest in this litigation, so the creditors are out of the picture") *and Biesek*, 440 F.3d at 413 ("Instead of abandoning the claim, the Trustee has asserted an interest in the proceeds."); *see also Cannon-Stokes v. Potter*, Case No. 03-C-1942 (N.D. Ill.) (Lefkow, J.) (Dkt. No. 37 (noting "an order of the bankruptcy court granting the trustee's motion to abandon the asset consisting of the pending claim so that plaintiff may proceed with her law suit")). It is nevertheless clear that the trustee in Leventhal's bankruptcy proceedings never affirmatively abandoned the creditors' interest in Leventhal's alleged copyright or in his potential copyright claims. Under these circumstances, based on the precedent set forth in *Biesek*, this court finds that Leventhal does not have standing to pursue his copyright claims in this case.

In the alternative, even if Leventhal were held to have standing to pursue his copyright claims in this case, the court finds that Leventhal is barred from doing so by the doctrine of judicial estoppel. In *Cannon-Stokes*, the Seventh Circuit summarized the material facts of the

---

[7] As a matter of prudential standing, the court may raise this issue despite the fact that neither party has addressed it. *See G & S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012) ("the court on its own may raise unpreserved questions of either constitutional or prudential standing").

case as follows: "Cannon-Stokes had represented that she had no claim against the Postal Service (or anyone else); that representation had prevailed; she had obtained a valuable benefit in the discharge of her debts. Now she wants to assert the opposite in order to win a second time. That satisfies the requirements of judicial estoppel." *Cannon-Stokes*, 453 F.3d at 447 (citing *New Hampshire*, 532 U.S. at 749). Leventhal's disavowal of his copyright ownership and potential copyright claims is materially indistinguishable from the relevant facts in *Cannon-Stokes*. Leventhal undeniably was aware in 2010 that he owned an allegedly valuable copyright in the Leventhal Business Information Data, having asserted his ownership of this copyright in the 2003 Copyright Case and having valued his copyright infringement claims at $5,000,000. (*See* 2003 Copyright Case, Dkt. No. 1; *compare Cannon-Stokes*, 453 F.3d at 448 ("It is impossible to believe that such a sizeable claim . . . could have been overlooked when Cannon-Stokes was filing in the bankruptcy schedules.").) The fact that Leventhal's copyright infringement claims were not "perfected" until February 9, 2012 is irrelevant. Schedule B explicitly instructed Leventhal to list whether he had any "Patents, copyrights, and other intellectual property" and whether he had any "contingent and unliquidated claims of every nature," in response to which Leventhal indicated "none." (Sch. B, Item 21 & Item 22.) Judge Guzman's July 29, 2004 dismissal of Leventhal's copyright claims in the 2003 Copyright Case clearly noted that registration of a copyright "is a prerequisite to bringing an action for copyright infringement." (2003 Copyright Case, Dkt. No. 14 at 4.) At the time of his bankruptcy filings, Leventhal was therefore on notice that his potential copyright infringement claims were "contingent" on Leventhal registering his copyright in the Leventhal Business Information Data and thereafter filing a renewed copyright infringement claim. These court filings, of which this court takes

judicial notice, clearly establish Leventhal's knowledge of the existence of these potential assets at the time he filed his bankruptcy Schedule B.  Moreover, like the plaintiff in *Cannon-Stokes*, Leventhal has taken no action to amend his bankruptcy schedules or re-open the bankruptcy proceedings, thereby undermining Leventhal's equitable position in this case.  *See Cannon-Stokes*, 453 F.3d at 448 ("[I]f Cannon-Stokes were really making an honest attempt to pay her debts, then as soon as she realized that [her Rehabilitation Act claim] *had* been omitted, she would have filed amended schedules and moved to reopen the bankruptcy, so that the creditors could benefit from any recovery.") (emphasis in original).  As a matter of equity, Leventhal is not permitted to litigate in this manner.  *See Cannon-Stokes*, 453 F.3d at 449 ("Judicial estoppel blocks any attempt to realize on this claim for [debtor's] personal benefit."); *accord Esparza*, 2011 WL 6820022, at *4 ("Here, Esparza filed for bankruptcy, failed to inform the Bankruptcy Court, the Trustee, or her creditors of the claims she is asserting in this case, and obtained a discharge of her debts based on the incomplete information she provided under oath to the Bankruptcy Court.  Therefore, she is judicially estopped from recovering on this supposedly nonexistent claim."); *Thompson*, 2008 WL 1924954, at *3 ("[I]t is clear that Thompson knew that his potential claims against Defendants on his second bankruptcy petition existed but failed to list them on his bankruptcy petition.  As such, Thompson, like the plaintiff in *Cannon-Stokes*, cannot now recover on those claims he concealed during his bankruptcy.").[8]

For the reasons set forth above, Leventhal's copyright claims are dismissed for lack of

---

[8] The court ties up one additional loose end by noting that, contrary to Leventhal's assertion, Bankruptcy Judge Doyle did not address the doctrine of judicial estoppel or "[t]he question of whether or not Leventhal's schedules were fraudulent" in her October 28, 2011 order.  (*See* Leventhal's Resp. at 14 (citing Adversary Proceeding, Dkt. No. 49).)

standing or, in the alternative, on the basis of judicial estoppel.

4.    Unfair Competition – Sixth Cause of Action

Finally, Defendants argue that Leventhal cannot bring a cause of action for unfair competition under 15 U.S.C. § 45, because that statute authorizes only the Federal Trade Commission to prevent unfair competition, not private litigants.  (Defs.' Mot. ¶ 35 (citing *La Salle St. Press, Inc. v. McCormick & Henderson, Inc.*, 293 F. Supp. 1004, 1006 (N.D. Ill. 1968) (Marovitz, J.) ("Private litigants may not seek relief under this statute because the Commission has original jurisdiction.")).)

In response, Leventhal has agreed "to voluntarily withdraw, without prejudice, his Sixth Cause of Action, Unfair Competition claim against Defendants."  (Pl.'s Resp. at 14.) Accordingly, Leventhal's Sixth Cause of Action is dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1).

## CONCLUSION

For the reasons set forth above, the "Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rule 12(b)(6) of Defendants Gene Byron Schenberg, Richard F. Huck, III, Michael J. McKitrick, Danna McKitrick, P.C., NetSecure Technologies, Ltd. and Daniel McCann" (Dkt. No. 97) is granted.  Plaintiff's First Cause of Action and Second Cause of Action are dismissed for failure to state a claim; Plaintiff's Third, Fourth, and Fifth Causes of Action are dismissed for lack of standing or, in the alternative, on the basis of judicial estoppel; Plaintiff's Sixth Cause of Action is voluntarily withdrawn pursuant to Federal Rule of Civil Procedure 41(a)(1).  The pending "Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rule 12(b)(6) of Defendant Patrick G. Somers" (Dkt. No. 110) is dismissed as moot.  Civil case

terminated.

ENTER:

_James F. Holderman_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: January 17, 2013